Eastern District of Kentucky
FILED

AUG 25 2006

AT LONDON
LESLIE G WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-562-GWU

CORA BURGETT,                                                    PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Burgett

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Burgett

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Burgett suffered from morbid obesity, rheumatoid arthritis, and radiculopathy. (Tr. 19). He determined that the plaintiff could engage in a full range of sedentary work and, thus, was unable to return to her past relevant work. (Tr. 17-18). However, Medical Vocational Guideline 201.27 directed a finding that the plaintiff was "not disabled." (Tr. 20). Thus, the claims for benefits were denied. (Id.).

In making the residual functional capacity finding, the ALJ relied on the residual functional capacity assessments of Consultative Examiner Mark Burns and Medical Reviewers Kenneth Phillips and R.K. Brown. (Tr. 17). The plaintiff argues that this was reversible error.

The plaintiff had a long-standing history of treatment for spinal and joint pain. Just prior to the alleged onset date, the plaintiff sought treatment for several years with Dr. George Chaney. Burgett's obesity (weight measured at 318 pounds and over) and complaints of spinal and joint pain were noted on multiple occasions. (Tr. 105, 106-107, 108-110, 112, 114, 115, 117, 119-123, 129). Beginning several

months after the January, 2003 onset date and for months during 2003, the plaintiff was documented to have visited the chiropractor on multiple occasions, primarily for treatment of neck and upper back pain after a motor vehicle accident. (Tr. 133-200).

However, the plaintiff's primary treatment came at the Hazard Clinic, where she first saw a physician's assistant and then saw Mitchell Wicker and Thomas Karelis. Her weight was recorded as between 304 and 322 pounds during late 2002 and 2003. (E.g., Tr. 211, 229). Multiple x-rays had been done in January, 2003, the month the plaintiff was involved in a motor vehicle accident. There was some straightening of the cervical spine (Tr. 222) and some anterior osteophyte formation of the thoracic spine (Tr. 221). By April, Wicker was considering whether the plaintiff's continuing back and joint pain represented rheumatoid arthritis; the joints were said to be somewhat boggy. (Tr. 210). A bone scan was said to show some <u>intense</u> uptake in the left elbow and both wrists, which was suggestive of either a fracture or severe acute arthritis. (Tr. 207, 236). Her wrist was exquisitely tender (Tr. 205). Sed rate results were elevated (Tr. 235).

The plaintiff also sought medical attention at the Best Practice Family Health Clinic, beginning in May, 2003. The doctors recorded repeated complaints of shoulder and/or neck and upper back pain and an elevated sed rate and positive rheumatoid factor were referenced. (E.g., Tr. 253).

In October, 2004 one of the plaintiff's doctors sent her for a rheumatology consultation. Morbid obesity (i.e., a weight of 304 pounds) as well as a contracture

Burgett

of the right elbow, swelling and decreased range of motion of both wrists, swelling and warmth of both ankles, and swelling and tenderness of the MCPs and MTPs were noted. (Tr. 263-264). Among the diagnoses were "polyarthritis with positive rheumatoid factor, almost certainly seropositive arthritis." (Tr. 265).

It is obvious that the treating sources provided detailed evidence and clinical studies suggesting that the plaintiff's arthritic condition was far worse than felt by the consultative examiner, who apparently had no access to treatment records or testing and therefore negatively referred to some of the plaintiff's statements as a "claim" (Tr. 243).[1] Had <u>any</u> <u>one</u> of these treating sources issued any residual functional capacity assessment, the result could well have been different. Unfortunately for the plaintiff, no treating sources made statements about work-related activity and, thus, the Court is left with the medical opinions that exist in the record.

The case will be affirmed.

This the ___25___ day of August, 2006.

*[signature: G. Wix Unthank]*
G. WIX UNTHANK
SENIOR JUDGE

---

[1] Some of the plaintiff's statements to that examiner can be verified by reference to the treatment notes. One of the Best Practice notes, for example, refers to the plaintiff's inability to afford anything but Bextra and Neurontin.